GRIMES, Judge.
The state appeals from an order suppressing appellee’s confession and certain tangible evidence on the ground that appellee and a co-defendant were unreasonably detained following a lawful stop. In the order of suppression, the court made the following findings:
1.That at about 4:00 A.M. on 21 November, 1980 Trooper R. Hurst, Florida Highway Patrol, made a lawful traffic stop of the automobile driven by Defendant, MARK AMATO, and also occupied by Co-Defendant, Windish, when Trooper Hurst observed said vehicle travelling in excess of the posted speed limit on U.S. Highway 19 in Pasco County, Florida;
2. That upon approaching the vehicle Trooper Hurst observed a large quantity of cigarettes contained in cartons and boxes in the back seat of Defendant Mark Amato’s vehicle;
3. That under the circumstances Trooper Hurst had a founded suspicion that the cigarettes might have been either the fruits of a recent burglary and theft, or might have been contraband untaxed cigarettes, and accordingly Trooper Hurst was justified in temporarily detaining both Defendants for a brief time to investigate the matter;
4. That Trooper Hurst immediately contacted the Sheriff’s Office and learned that there was no report of a recent burglary involving the theft of cigarettes;
5. That upon the arrival of backup units from the Sheriff’s Office, police officers backtracked the Defendant’s route South on U.S. Highway 19, but found no evidence of a burglary or theft of cigarettes at any of the places of business along Defendant’s path;
6. That Trooper Hurst also contacted the dispatcher for Department of Alcohol and Tobacco, who dispatched Agent White from bed in his home in Brooks-ville some 30 to 35 miles from the scene of the stop, to determine if the cigarettes bore Florida tax stamps;
7. That while awaiting the arrival of Agent White of the Department of Alcohol and Tobacco, Trooper Hurst himself entered Defendant Amato’s vehicle, examined the cigarettes, and observed that they appeared to have Florida tax stamps;
8. That throughout the detention Defendant Amato and Defendant Windish were separated, placed uncuffed in separate police cars, and were detained for a period of at least one hour after the *777 initial stop, prior to the arrival of Agent White at the scene during which time both Defendants were questioned separately after Miranda by Trooper Hurst, initially, and then by Detective Phillips with both defendants denying criminal conduct.
9. That upon his arrival at the scene, Agent White examined the cigarettes and determined that they contained proper Florida tax stamps;
10. That after examining the cigarettes, and determining that the cigarettes were properly tax stamped, the detention of the Defendants continued while Agent White read each Defendant Miranda, and interrogated each defendant separately, attempting to determine if the cigarettes were stolen in a recent burglary.
11. That after the officers had investigated the possibility of a burglary and theft, and were unable to uncover any evidence that the cigarettes in Defendant Amato’s car were stolen, and after Agent White had determined that the cigarettes were properly tax stamped, the continued detention and interrogation of the defendants from that point became an illegally prolonged detention;
12. That defendants were detained for a period of at least one hour and fifteen minutes prior to the Defendant Amato’s confession, which confession provided the probable cause to arrest Defendant Amato.
The record fairly supports the findings of fact outlined above, though Trooper Hurst actually testified that the tax stamps he examined were smeared so that he could not tell whether they were genuine. However, certain additional facts should also be noted. When Trooper Hurst first asked Mr. Amato where he obtained the cigarettes, he stated that he had bought them from a man in the parking lot of the Crown Lounge for $900. He said he had paid one half the purchase price in cash, but he did not know the name of the seller. Later, he told Detective Phillips that he had paid $500 in cash and owed an additional $300. The co-defendant Windish simply said that .the cigarettes were in the car when Amato picked him up. After Agent White of the Department of Alcohol and Tobacco arrived at the scene, he looked at the cigarettes through the car window and then asked Amato for the invoice. When Amato said he did not have an invoice, White went back to the vehicle to examine the cigarettes and found that they appeared to have proper tax stamps. He asked Amato where he had gotten the cigarettes, and Amato responded that he had purchased them “from some guy in the parking lot of the Crown Lounge.” White next addressed Windish who declined to make a statement. While White was interrogating Windish, one of the deputies advised White that Amato wished to talk with him privately. Amato then confessed to White that he and Windish had stolen the cigarettes. The time which elapsed between White’s arrival at the scene and Amato’s confession was estimated to be from five to ten minutes.
The court found and appellee has conceded that the detention was proper until Agent White examined the cigarettes to see if they were properly stamped. Thus, the narrow issue is whether the police were justified in holding the suspects for the approximately five additional minutes necessary for Agent White to question them. We believe that they were. Agent White was new on the scene. When he determined that the tax stamps appeared to be genuine, the possibility of theft became all the more likely. Appellee had related an incredible story of how he acquired the cigarettes, and he was not even consistent with respect to its details. The reasonableness of an investigatory detention depends not only upon its length but on the circumstances which surround it. State v. Merklein, 388 So.2d 218 (Fla.2d DCA 1980), review denied, 392 So.2d 1377 (Fla.1981). We hold that under the circumstances presented in this case, the police had not unreasonably detained the suspects by the time ap-pellee made his confession.
Accordingly, we reverse the order of suppression and remand the case for further proceedings.
SCHEB, C. J., and CAMPBELL, J., concur.